SETON HALL LAW SCHOOL
CENTER FOR SOCIAL JUSTICE
Kevin B. Kelly, Esq. (KK4727)
Michael S. Henningsen, L. Civ. R. 101.1(h)
833 McCarter Highway
Newark, NJ 07102
Phone (973) 642-8700
Fax (973) 642-8384
Kevin.kelly@shu.edu
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**ANDREA HINDS, FAIR HOUSING COUNCIL OF NORTHERN NEW JERSEY, NIYAH ATWELL, SHANNAH BECKETT, JABARI BROWN, CHARLES MCPHERSON, AND MICHAEL OTUWURUNNE**

***Plaintiffs*,**

**v.**

**155 GROVE PROPERTIES; JS MANAGEMENT LLC.; ROSANNA YARINGANO; THE CHARLES RABINOWITZ REVOCABLE TRUST; JOHN DOE 1-10; AND XYZ CORPORATION 1-10.**

***Defendants*.**

**CIVIL ACTION NO. _______________**

**COMPLAINT**

The Plaintiffs, Andrea Hinds, the Fair Housing Council of Northern New Jersey, Niyah Atwell, Shannah Beckett, Jabari Brown, Charles McPherson, and Michael Otuwurunne (collectively "Plaintiffs"), through their attorney, file this Complaint against 155 Grove Properties, LLC, Rosanna Yaringano, JS Management, LLC, the Charles Rabinowitz Revocable

Trust, John Doe 1-10, and XYZ Corporation 1-10 (collectively "Defendants"), and in support thereof allege as follows:

## I. SUMMARY OF CLAIMS

1. This civil action arises under the Fair Housing Act ("FHA"), 42 U.S.C. §3601, *et. seq*. and the New Jersey Law Against Discrimination, N.J.S.A §10:1 *et seq*. ("NJLAD"). Plaintiffs seek declaratory judgment, injunctive relief, compensatory damages, equitable relief and other relief as this Court may deem appropriate.

2. Plaintiffs contend that Defendants JS Management, LLC ("JS Management"), Rosanna Yaringano, the Charles Rabinowitz Revocable Trust, and other named Defendants have violated the FHA and the NJLAD by systematically discriminating against African Americans who apply for tenancy at their properties. More specifically, Plaintiffs allege that Defendants and their agents intentionally denied African Americans the opportunity to lease units within the properties by placing African American applicants on fictitious waiting lists, intentionally providing false information about unit availability within the properties, disparately applying additional terms and conditions to African American applicants, and providing false justifications for rejecting African American applicants.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 2614 over Plaintiffs' causes of action as federal questions arising under the Fair Housing Act, 42 U.S.C. § 3601, *et seq*. This Court has supplemental jurisdiction over Plaintiffs' cause of action under New Jersey law pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over JS Management, LLC, a New Jersey corporation with their principal place of business and operations in New Jersey.

5. This Court has personal jurisdiction over The Charles Rabinowitz Revocable Trust, which owns commercial real property and conducts business in New Jersey.

6. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Defendants are subject to personal jurisdiction and have the capacity to be sued in the District of New Jersey, and the events which gave rise to this action occurred within the District of New Jersey.

## III. PARTIES

***Plaintiff Fair Housing Council of Northern New Jersey***

7. Plaintiff Fair Housing Council of Northern New Jersey ("FHC") is a private, nonprofit civil rights organization in New Jersey that enforces federal and state housing anti-discrimination laws.

8. FHC protects victims of discrimination by investigating housing discrimination complaints and, when necessary, working with governmental agencies and private attorneys to bring actions for housing discrimination to ensure the vigorous enforcement of fair housing laws.

9. In Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982), the United States Supreme Court held that a fair housing organization has suffered an injury in fact, and therefore has standing to sue, when the Defendant's discriminatory practices have impaired the organization's ability to carry out its purpose to ensure equal housing, thus resulting in a drain on the organization's resources.

***Plaintiff Andrea Hinds***

10. Plaintiff Andrea Hinds ("Hinds") is a resident of New Jersey. Plaintiff Hinds lives at 791 Cedar Lane Apt. B, Teaneck, 07666 along with her three children.

***Plaintiff Testers***

11. Fair Housing Testers, including Plaintiffs Niyah Atwell, Shannah Beckett, Jabari Brown, Charles McPherson, and Michael Otuwurunne, were hired by FHC to contact and meet with JS Management about renting an apartment in an effort to ascertain whether the employees and agents were discriminating against potential tenants on the basis of race and to collect evidence of same.

12. In Havens Realty Corp., 455 U.S. at 373–374, the Supreme Court confirmed that testers have standing to sue under the FHA because they are the object of misrepresentation made unlawful by the FHA and suffer an injury that the FHA was designed to prevent.

***Defendant JS Management***

13. JS Management is a New Jersey limited liability company with its principal place of business located at 625 N. Broad Street, Elizabeth, NJ 07208. Upon information and belief, JS Management operates and manages the apartment property at 101 Liberty Road, Bergenfield, NJ 07621("Liberty Gardens Property").

14. The Liberty Gardens Property, and the apartments therein, constitute a dwelling within the meaning of 42 U.S.C. § 3602(b).

***Defendant The Charles Rabinowitz Revocable Trust***

15. Defendant The Charles Rabinowitz Revocable Trust owns the Liberty Gardens Property.

***Defendant Rosanna Yaringano***

16. Upon information and belief, Defendant Rosanna Yaringano manages and acts as a rental agent for the Liberty Gardens Property.

***Defendants John Doe 1-10 and XYZ Corporation 1-10***

17. The true names and capacities of the Defendants named herein as John Doe 1-10 and XYZ Corporation 1-10 are unknown to Plaintiff, who therefore sues them under these fictitious names. Plaintiff will amend this complaint to add their true names and capacities when they become known.

## IV. FACTUAL ALLEGATIONS

18. JS Management manages apartment buildings in New Jersey.

19. JS Management manages and operates the Liberty Gardens Property in Bergenfield, New Jersey.

20. The Charles Rabinowitz Revocable Trust owns the Liberty Gardens Property.

21. The Liberty Gardens Property consists of 232 rental units. As of January 29, 2019, 187 units are occupied by Hispanic tenants, 24 units are occupied by Asian tenants, 11 units are occupied by Caucasian tenants, and 10 units are occupied by African American tenants. *See* DCR MDRR January 29, 2019 Annual Report, attached as Exhibit A.

22. According to the United States Census Bureau, as of 2019, 52.9 percent of Bergenfield's residents are white, 28.7 percent of Bergenfield's residents are Hispanic or Latino, and 6.9 percent of Bergenfield residents are African American.[1]

23. Defendants use unlawful discriminatory criteria to maintain a pattern and practice of screening prospective tenants based on their race, color, national origin and source of lawful income prior to renting apartments.

---

[1] U.S. Census Bureau, *QuickFacts: Bergenfield Borough, New Jersey*, https://www.census.gov/quickfacts/bergenfieldboroughnewjersey (last visited Jan. 31, 2020).

24. At all times relevant to this complaint, whenever an individual inquired at the JS Management office about an apartment rental, Ms. Yaringano asked questions to collect information to determine that person's perceived suitability as a tenant. These questions included but are not limited to inquiries about income, source of income, employment status, family size, criminal background, credit history, etc.

25. On March 9, 2018, Ms. Hinds called Liberty Gardens and spoke to Ms. Yaringano about renting an apartment.

26. On March 10, 2018, Ms. Hinds visited the Liberty Gardens Property and was shown a two-bedroom unit on the second floor by the superintendent. While showing Ms. Hinds the apartment, the superintendent told her that it was immediately available, and that management wanted the unit rented as soon as possible.

27. On March 12, 2018, Ms. Hinds called JS Management and spoke with Ms. Yaringano about renting the unit that she visited on March 10th.

28. During the March 12th phone call, Ms. Hinds told Ms. Yaringano that Ms. Hinds had a Section 8 Housing Choice Voucher. According to the State of New Jersey Department of Community Affairs website, a Section 8 Housing Choice Voucher assists in making safe and quality housing in the private market affordable to low income households by reducing housing costs through direct rent subsidy payments to landlords.

29. On the evening of March 12, 2018, Ms. Hinds visited the office located at 101 Liberty Road in Bergenfield, New Jersey at which time she completed an application form and confirmed her interest in the unit she visited on March 10th.

30. When Ms. Hinds arrived at the office, Ms. Yaringano did not greet, approach, or engage with Ms. Hinds, despite having scheduled the appointment with her earlier in the day.

31. After Ms. Hinds initiated conversation with Ms. Yaringano and reminded her that they had spoken earlier in the day over the phone, Ms. Yaringano told Ms. Hinds that there was a waiting list for two-bedroom units.

32. Ms. Yaringano told Ms. Hinds that her credit would be checked and to take an application form, fill it out, and wait to be called.

33. Ms. Hinds was told that the rent for two-bedroom apartments was $1,750 per month, and that they require one and a half months rent as a security deposit.

34. On March 14, 2018, Ms. Yaringano called Ms. Hinds and stated that the unit in question had been rented to someone else with better credit.

35. Ms. Yaringano never performed a soft or hard check on Ms. Hinds' credit at any time relevant to this action.

36. On March 15, 2018, Ms. Hind's Hispanic coworker, Ruth Jones called JS Management to inquire about renting a two-bedroom unit. Ms. Yaringano told Ms. Jones that such a unit was available immediately, and that the monthly rent was $1,725 per month with a security deposit of one month's rent.

37. On March 15, 2018, Ms. Hinds emailed FHC to pursue a complaint regarding the discrimination she suffered at the hands of JS Management.

38. On March 17, 2018, Ms. Hinds called Ms. Yaringano to assert her continued interest in renting a two-bedroom unit located on the Liberty Gardens Property. Ms. Yaringano informed her that no two-bedroom units were available.

39. On March 17, 2018, Ms. Yaringano called Ruth Jones to inform her that a two-bedroom unit was still available.

40. After receiving the email inquiry from Ms. Hinds, FHC utilized testers to act as prospective tenants at the test site. Using testers to expose housing discrimination is a common practice under the FHA. According to the United States Department of Justice website, "[t]esting refers to the use of individuals who, without any bona fide intent to rent . . . [an] apartment . . . pose as prospective . . . renters of real estate for the purpose of gathering information."[2]

41. Tests are often set up such that the testers have similar financial profiles and rental preferences, but differ only as to the protected trait, in this case, race.

42. After posing as prospective renters, the testers document their experience at the particular test site. Then, fair housing organizations and their lawyers compare the way the testers were treated at the test site in order to reveal potential violations of the law.

43. In this case, testers called or emailed employees or agents of the Defendants to set up appointments to tour apartments at the test site and then attended those appointments. Thereafter, each tester filled out a form provided by the FHC summarizing their experience at the test site.

44. Upon information and belief, there were units available for rent at the Liberty Garden Property at all times relevant to this complaint.

45. As the facts will illustrate in more detail below, African American testers were consistently discriminated against through Defendants', (1) refusal to rent or negotiate to rent, (2) misrepresentations about the availability of rental units, and (3) disparate treatment in the imposition of rental terms, conditions and privileges.

---

[2] Dept of Justice, *Fair Housing Testing Program*, https://www.justice.gov/crt/fair-housing-testing-program-1(last visited Jan. 31, 2020).

***March 19, 2018 Site Test: Plaintiff-Tester Shannah Beckett***

46. On March 19, 2018, at 10:44 A.M., Plaintiff Shannah Beckett arrived at the JS Management office and met with Ms. Yaringano to inquire about a two-bedroom unit. Ms. Beckett is an African American female who posed as a married woman and indicated that she and her husband had a combined annual income of $115,000.

47. Upon entering the rental office, Ms. Beckett waited around five minutes for Ms. Yaringano to stop speaking on the telephone.

48. Ms. Beckett informed Ms. Yaringano that Ms. Beckett and her husband were seeking a two-bedroom unit with a move-in date of May 1, 2018.

49. Ms. Yaringano did not show Ms. Beckett any unit within the property.

50. Ms. Yaringano did not show Ms. Beckett any amenities on the premises.

51. Ms. Yaringano told Ms. Beckett a two-bedroom unit would not be ready until May 1, 2018.

52. Ms. Yaringano told Ms. Beckett that there was a waiting list for a two-bedroom unit.

53. Ms. Yaringano did not ask Ms. Beckett to submit a rental application.

54. Ms. Beckett's entire interaction at the property lasted six minutes.

***March 19, 2018 Site Test: Tester Govinda Diaz***

55. On March 19, 2018, at 12:00 P.M., Tester Govinda Diaz arrived at JS Management's office and met with Ms. Yaringano to inquire about renting a two-bedroom unit. Ms. Diaz is a Hispanic female who posed as married and indicated that she and her husband had a combined annual income of $101,000.

56. Upon entering the rental office, Ms. Diaz waited between five and ten minutes for Ms. Yaringano to greet her.

57. Ms. Diaz informed Ms. Yaringano that Ms. Diaz and her husband were seeking a two-bedroom unit with a move-in date of May 1, 2018.

58. Ms. Yaringano showed Ms. Diaz Unit A in building 143 and also an available one-bedroom unit.

59. Ms. Yaringano showed Ms. Diaz the laundry facility located on the premises of the Liberty Gardens Property.

60. Ms. Yaringano asked Ms. Diaz to fill out a rental application.

61. Ms. Diaz's interaction at the property lasted for approximately thirty minutes.

62. Ms. Yaringano called Ms. Diaz to follow up on her application after the site visit.

***March 23, 2018 Site Test: Plaintiff-Tester Charles McPherson***

63. On March 23, 2018, at 1:35 P.M., Plaintiff Charles McPherson arrived at the JS Management office and met with Ms. Yaringano to inquire about renting a two-bedroom unit. Mr. McPherson is an African American male who posed as married and indicated that he and his wife had a combined annual income of $105,000.

64. Mr. McPherson informed Ms. Yaringano that he and his wife were seeking a two-bedroom unit and were flexible regarding the move-in date.

65. Ms. Yaringano told Mr. McPherson there were no two-bedroom units available.

66. Ms. Yaringano told Mr. McPherson there was a waiting list for a two-bedroom unit.

67. Ms. Yaringano did not show Mr. McPherson any units within the property.

68. Ms. Yaringano told Mr. McPherson a two-bedroom unit may be ready by May 1, 2018.

69. Ms. Yaringano told Mr. McPherson that the security deposit would be equal to one and one-half months' rent.

70. Ms. Yaringano told Mr. McPherson that the minimum salary to rent an apartment was $55,000.

71. Ms. Yaringano did not ask Mr. McPherson to submit a rental application.

72. Ms. Yaringano informed Mr. McPherson that dogs are not allowed on the property and that all tenants must undergo a credit check.

73. Mr. McPherson's interaction at the property lasted fifteen minutes.

***March 23, 2018 Site Test: Tester Karime Guerra***

74. On March 23, 2018, at 2:30 P.M., Tester Karime Guerra ("Ms. Guerra") arrived at the JS Management office and met with Ms. Yaringano to inquire about renting a two-bedroom unit. Ms. Guerra is a Hispanic female who posed as an administrative assistant with an annual income of $98,000.

75. Ms. Guerra was greeted immediately upon entering the office, whereupon she informed Ms. Yaringano that she was interested in renting a two-bedroom unit.

76. Ms. Yaringano told Ms. Guerra that there were two-bedroom units available immediately.

77. Ms. Yaringano showed Ms. Guerra a two-bedroom unit located in the rear of the building at 101 Liberty Road.

78. Ms. Yaringano offered to reduce the security deposit from one and a half month's rent to one month's rent.

79. Ms. Yaringano told Ms. Guerra that the minimum salary to rent an apartment was $50,000.

80. Ms. Yaringano informed Ms. Guerra that most of the tenants living at 101 Liberty Road were from Colombia, South America, and the Dominican Republic, despite Ms. Guerra providing no indication that she was from any of those regions.

81. Ms. Yaringano gave Ms. Guerra an application to rent a unit and informed Ms. Guerra of the application fee, noting that Ms. Guerra could pay her deposit the following Monday in order to secure the unit that she had been shown.

82. Ms. Guerra's interaction at the property lasted for approximately one hour and forty-five minutes.

***March 27, 2018 Site Test: Tester Niyah Atwell***

83. On March 27, 2018, at 12:45 P.M., FHC Tester Niyah Atwell arrived at the JS Management Office at 101 Liberty Gardens to inquire about renting a two-bedroom apartment. Ms. Atwell is an African American female who posed as a single woman and indicated that she had an annual income of $102,000.

84. When Ms. Atwell entered the office, she asked about renting a two-bedroom apartment and if she could view one, Ms. Yaringano told her that no two-bedroom units would be available until May. Ms. Yaringano then said she could take Ms. Atwell's information and handed her a book to put her name on a waitlist.

85. Ms. Atwell then asked when she would be able to at least see an apartment and Ms. Yaringano told her likely not until May as there were tenants still moving out. Ms. Yaringano also told Ms. Atwell that the two-bedroom apartments are $1,725 a month with heat and hot water included.

86. Once Ms. Atwell had finished writing her contact information in the book she left the office. Ms. Atwell's interaction at the property lasted for approximately ten minutes.

***March 28, 2018 Site Test: Tester Maria Valentin***

87. On March 28, 2018, at 12:45 P.M., FHC Tester Maria Valentin arrived at the JS Management Office at 101 Liberty Gardens to meet with the property manager, Ms. Yaringano, and follow up on an apartment Ms. Valentin was shown the week before. Ms. Valentin is a Hispanic female who posed as an administrative assistant with an annual income of $98,000.

88. Ms. Valentin told Ms. Yaringano that she was looking at other apartments but wanted to see if the unit was still available. Ms. Yaringano informed her that the apartment, while currently vacant, had been shown earlier that morning and the other applicant was returning to make a deposit later that day, but offered to take Ms. Valentin to tour the apartment again anyway. Ms. Yaringano also gave Ms. Valentin another copy of the application and apartment information after Ms. Valentin indicated that she had lost her original copy.

89. Ms. Yaringano drove Ms. Valentin to Unit K located at 143 Howard Drive and allowed Ms. Valentin to tour the apartment and take photographs. Ms. Yaringano also told Ms. Valentin that the dimensions of the master bedroom would fit a king size bed with two bedside tables and that there was ample street parking available in the area.

90. Ms. Yaringano told Ms. Valentin that if the other applicant did not return that afternoon with the deposit, Ms. Valentin could come back the next day and the apartment could be hers starting on April 1, 2018.

91. Ms. Valentin stated that she could not take the apartment until April 15, 2018, because she had another commitment, and in response Ms. Yaringano told her that if the unit was not rented by Thursday, March 29 (the next day), and Ms. Valentin brought in a security

deposit of $1,725, plus a $50 application fee, that the apartment could be held until April 15, 2018.

92. Ms. Valentin inquired if a credit check would be conducted and indicated that her credit was good. Ms. Yaringano stated that there would be no problem, and that she can tell by looking at a person whether their credit is good.

93. After while driving back to the main office, Ms. Yaringano told Ms. Valentin about the services provided by the apartment complex, such as a 24/7 superintendent on call for emergency repairs, as well as the way to set up maintenance for minor repairs through the main office.

94. Ms. Valentin told Ms. Yaringano that she would need to think about the unit and would get back in touch by the end of the week with a decision.

95. Ms. Valentin's interaction at the property lasted for approximately thirty-five minutes.

***March 28, 2018 Site Test: Tester Michael Otuwurunne***

96. On March 28, 2018, at 2:15 P.M., FHC Tester Michael Otuwurunne arrived at the JS Management office at 101 Liberty Road to inquire about renting an apartment and met with Ms. Yaringano. Mr. Otuwurunne is an African American male, who posed as a Professor at Farleigh Dickinson University with an annual income of $102,000.

97. Mr. Otuwurunne indicated that he was looking for a two-bedroom apartment and would like to move in around mid-April. Ms. Yaringano told him that there were no two bedroom units available at the time. She stated that the last one had been taken by another applicant who had put in their security deposit and would be moving in on April 1st. She then gave Mr. Otuwurunne a writing pad that he could write his information on so that she could add him to a waiting list in case anything became available.

98. Mr. Otuwurunne then requested to see one of the vacant apartments, even though she had told him none were available to rent so that at least he knew what they look like. Ms. Yaringano called the maintenance personnel and got them to open the apartment she had referenced before.

99. During the walk to the unit Ms. Yaringano asked what Mr. Otuwurunne did for a living, and he told her that he was a Professor of Organizational Psychology at Farleigh Dickinson University, so he was looking for an apartment near the campus.

100. Ms. Yaringano then asked Mr. Otuwurunne where he was from originally, and he told her Nigeria, and asked if she had ever been there. She replied that she had not and then stated that she thought he was from "the islands." When Mr. Otuwurunne asked which islands, she said Jamaica or the Bahamas.

101. Once they reached the apartment, Ms. Yaringano told him that although the security deposit had been paid, she could give him the apartment if the new tenants did not come on the first of April. She also mentioned that there was another apartment that she could show him, and took him to see Apartment N in Building 148.

102. When they reached Apartment N, Ms. Yaringano informed Mr. Otuwurunne that this apartment was more spacious because it was an upstairs apartment, but that there were noisy children that lived downstairs.

103. Upon completion of the tour, Mr. Otuwurunne obtained a copy of the floor plan and Ms. Yaringano told him that she would like to have him as a tenant, and that she would give him a call.

***April 9, 2018 Site Test: Plaintiff-Tester Jabari Brown***

104. On April 9, 2018, at 2:00 P.M., Plaintiff Jabari Brown ("Mr. Brown") arrived at the JS Management office and met with Ms. Yaringano to inquire about renting a one-bedroom or two-bedroom unit at the Liberty Gardens Property. Mr. Brown is an African American male who posed as married and indicated that he and his wife had a combined annual income of $118,000.

105. Mr. Brown informed Ms. Yaringano that he and his wife were seeking a one-bedroom or a two-bedroom unit and were flexible regarding the move-in date.

106. Ms. Yaringano told Mr. Brown there were no two-bedroom units available.

107. Ms. Yaringano did not show Mr. Brown any units within the property. Ms. Yaringano told Mr. Brown to view the administrative office they were in as it was representative of a one-bedroom apartment.

108. Ms. Yaringano told Mr. Brown that a one-bedroom unit would be ready by May 1, 2018, but that there was a waiting list for a two-bedroom unit.

109. Ms. Yaringano did not ask Mr. Brown to submit a rental application.

110. Mr. Brown's interaction at the property lasted for approximately thirty minutes.

***April 9, 2018 Site Test: Tester Dana Sala***

111. On April 9, 2018, at 12:30 P.M., Tester Dana Sala ("Ms. Sala") arrived at the JS Management office to inquire about renting a two-bedroom unit. Ms. Sala is a Caucasian female who posed as married with an annual income of $100,000.

112. Ms. Sala was greeted immediately upon entering the office, whereupon she informed Ms. Yaringano that she was interested in renting a two-bedroom unit.

113. Ms. Yaringano told Ms. Sala that there would be a two-bedroom unit available on May 1, 2018. Ms. Yaringano informed Ms. Sala that the current tenants would be leaving the third week of April. Ms. Yaringano then stated that JS Management would sand the floors and freshen up the apartment before it would be ready on May 1.

114. Ms. Yaringano called a current tenant and showed Ms. Sala apartment 121 F, a two-bedroom unit located in the rear of the building at the property.

115. Ms. Yaringano requested that Ms. Sala write down her name and phone number so that Ms. Yaringano could follow up with her.

116. Ms. Yaringano then provided Ms. Sala with a rental application.

117. Before departing the office, Ms. Sala once again inquired about one-bedroom apartments. Ms. Yaringano informed her that they were being renovated but she could secure one of the units if she was interested.

118. Ms. Sala's interaction at the property lasted for approximately twenty minutes.

***April 9, 2018 Site Test: Tester Mirta Diaz***

119. On April 9, 2018, at 10:05 A.M., tester Mirta Diaz ("Ms. Diaz") arrived at the JS Management office and met with Ms. Yaringano to inquire about renting a one-bedroom or two-bedroom unit. Ms. Diaz is a Hispanic female who posed as married and indicated that she had an annual income of $98,000.

120. Ms. Diaz informed Ms. Yaringano that she was seeking a one-bedroom or a two-bedroom unit and was flexible regarding the move-in date.

121. Ms. Yaringano told Ms. Diaz there were no two-bedroom units currently available.

122. Ms. Yaringano told Ms. Diaz that there would be a two-bedroom unit available May 1, 2018.

123. Ms. Yaringano then provided Ms. Diaz with a rental application and her business card.

124. Ms. Yaringano informed Ms. Diaz that she could come back and view the two-bedroom apartment another day and recommended to Ms. Diaz that she bring the completed application, three copies of her pay stubs, an ID, and a copy of her tax returns.

125. Ms. Diaz's interaction at the property lasted for approximately twenty-five minutes.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. §3604(a)

126. Paragraphs 1 through 125 are hereby realleged and reasserted as if fully rewritten herein.

127. Defendants have injured Plaintiffs Andrea Hinds, Fair Housing Council, Niyah Atwell, Shannah Beckett, Jabari Brown, Charles McPherson, and Michael Otuwurunne in violation of the federal Fair Housing Act by committing housing practices indicative of disparate treatment. Specifically, Defendants discriminated against Plaintiffs by making dwellings unavailable or denying the availability of dwellings because of race, in violation of 42 U.S.C. § 3604(a).

128. Defendant, the Charles Rabinowitz Revocable Trust, is vicariously liable for the discriminatory actions of its agent Ms. Yaringano as property owners have a non-delegable duty not to discriminate under the FHA.

129. Defendant, JS Management, is vicariously liable for the discriminatory actions of its employee and agent, Ms. Yaringano.

130. Plaintiffs are aggrieved persons as defined in 42 U.S.C. § 3602(i), have been injured by the Defendants' discriminatory conduct, and have suffered damages as a result.

131. The Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

132. Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, reasonable attorney's fees and costs, and such further relief as the Court deems equitable and just.

**COUNT II:**
**VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. §3604(b)**

133. Paragraphs 1 through 132 are hereby realleged and reasserted as if fully rewritten herein.

134. Defendants have injured Plaintiffs Andrea Hinds, Fair Housing Council, Niyah Atwell, Shannah Beckett, Jabari Brown, Charles McPherson, and Michael Otuwurunne in violation of the federal Fair Housing Act by committing housing practices indicative of disparate treatment. Specifically, Defendants have discriminated against Plaintiffs in the terms, conditions, or privileges of renting a dwelling because of race, in violation of 42 U.S.C. § 3604(b).

135. Defendant, the Charles Rabinowitz Revocable Trust, is vicariously liable for the discriminatory actions of its agent Ms. Yaringano as property owners have a non-delegable duty not to discriminate under the FHA.

136. Defendant, JS Management, is vicariously liable for the discriminatory actions of its employee and agent, Ms. Yaringano.

137. Plaintiffs are aggrieved persons as defined in 42 U.S.C. § 3602(i), have been injured by the Defendants' discriminatory conduct, and have suffered damages as a result.

138. The Defendants' conduct was intentional, willful, and made with disregard for the rights of others.

139. Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such further relief as the Court deems equitable and just.

## COUNT III: VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. §3604(d)

140. Paragraphs 1 through 139 are hereby realleged and reasserted as if fully rewritten herein.

141. Defendants have injured Plaintiffs Andrea Hinds, Fair Housing Council, Niyah Atwell, Shannah Beckett, Jabari Brown, Charles McPherson, and Michael Otuwurunne in violation of the federal Fair Housing Act by committing housing practices indicative of disparate treatment. Specifically, Defendants have discriminated against Plaintiffs by representing to them, because of their race, that housing was unavailable for inspection, sale, or rental, when such dwellings were in fact available, in violation of 42 U.S.C. § 3604(d).

142. Defendant, the Charles Rabinowitz Revocable Trust, is vicariously liable for the discriminatory actions of its agent Ms. Yaringano as property owners have a non-delegable duty not to discriminate under the FHA.

143. Defendant, JS Management, is vicariously liable for the discriminatory actions of its employee and agent, Ms. Yaringano.

144. Plaintiffs are aggrieved persons as defined in 42 U.S.C. § 3602(i), have been injured by the Defendants' discriminatory conduct and have suffered damages as a result.

145. The Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

146. Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such further relief as the Court deems equitable and just.

**COUNT IV:**
**VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION -– N.J.S.A. 10:5–1 *et seq.***

147. Paragraphs 1 through 146 are hereby realleged and reasserted as if fully rewritten herein.

148. Defendants have injured Plaintiffs Andrea Hinds, Fair Housing Council, Niyah Atwell, Shannah Beckett, Jabari Brown, Charles McPherson, and Michael Otuwurunne in violation of the New Jersey Law Against Discrimination by committing housing practices indicative of disparate treatment. Specifically, Defendants have refused to lease, sublease, or otherwise provide access to real property or part or portion thereof because of their race.

149. Accordingly, under N.J.S.A. 10:5–13, Plaintiffs are entitled to all remedies available in common law tort actions, reasonable attorney fees and costs, and such further relief as the Court deems equitable and just.

**WHEREFORE**, Plaintiffs pray that this Court grant judgment against Defendants for relief that:

150. Awards actual compensatory and punitive damages;

151. Declares that the actions of Defendants complained of herein have violated the applicable provisions of the federal Fair Housing Act;

152. Enters a permanent injunction against Defendants, enjoining all unlawful acts and practices complained of herein;

153. Requires Defendants to take appropriate affirmative action to ensure that the activities complained of herein are not engaged in again;

154. Awards reasonable attorneys' fees and costs;

155. Awards all remedies available in common law tort actions; and

156. Awards all such other relief as the Court deems equitable and just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

/s/ Kevin B. Kelly
SETON HALL LAW SCHOOL
CENTER FOR SOCIAL JUSTICE
Kevin B. Kelly, Esq. (KK4727)
Michael S. Henningsen, L. Civ. R. 101.1(h)
833 McCarter Highway
Newark, NJ 07102
Phone (973) 642-8700
Fax (973) 642-8384
Kevin.kelly@shu.edu
Attorney for Plaintiff